## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MEGAN KERN SOKOLOWSKI,** | : | **Civil No.  4:24-CV-1213** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,[1]** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The instant Social Security appeal highlights the role medical opinion evidence plays in an administrative law judge's (ALJ's) assessment of a disability claimant's impairments and the importance of the ALJ's articulation of this assessment in concluding a claimant is not entitled to disability benefits. The plaintiff, Megan Sokolowski, was born with a congenital spinal condition called Bertolotti's Syndrome, where the lowest vertebra is not connected to the sacrum.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

(Tr. 955, 1152). This condition has caused Sokolowski significant pain and discomfort in her lumbar spine and resulted in at least three surgeries. During the disability determination process, four experts opined on the limiting effects of Sokolowski's spinal condition and accompanying symptoms. Two state agency non-examining, non-treating sources and a consultative examiner concluded that Sokolowski was capable of at least light work with some postural limitations despite her impairments. Her treating provider, Dr. Paul Orange, issued a much more restrictive opinion, concluding Sokolowski would be completely disabled by her conditions. The ALJ in this case credited the opinions of the state agency consultants and found the much more restrictive opinion of Dr. Orange unpersuasive.

As is typical in these cases, the consultative examiner and state agency consultants issued their opinions toward the beginning of the disability period, in May and October 2022. Thus, this case draws to mind the well-settled tenet that, when an ALJ's decision rests upon the opinions of state agency experts issued at the outset of the agency process:

> [C]ase law . . . cautions courts to take into account the fact that state agency non-treating and non-examining source opinions are often issued at an early stage of the administrative process. While this fact, standing alone, does not preclude consideration of the agency doctor's opinion, see Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011), it introduces another level of caution that should be applied when evaluating reliance upon such opinions to discount treating and examining source medical statements. Therefore, where a state agency

2

> non-treating and non-examining opinion does not take into account material medical developments which have occurred after the opinion was rendered, that opinion often cannot be relied upon by the Commissioner to carry its burden of proof. See Batdorf v. Colvin, 206 F. Supp. 3d 1012, 1023 (M.D. Pa. 2016).

Foose v. Berryhill, No. 3:17-CV-00099, 2018 WL 1141477, at *7 (M.D. Pa. Mar. 2, 2018).

This principle controls here and, in our view, call for a remand of this case. Here, while the fact that these state agency opinions credited by the ALJ were issued at the early stage of the administrative process, standing alone, does not preclude the ALJ from crediting them, given the level of caution to be applied in such cases, our careful review of the record reveals that these opinions did not take into account subsequent material medical developments in this case, including the plaintiff being involved in a motor vehicle accident, undergoing a third surgery to remove hardware from her lumbar spine, and physical therapy records showing that, following this surgery, Sokolowski's condition had considerably deteriorated and she had heavily limited mobility and an inability to perform activities of daily living. Moreover, the ALJ did not address the physical therapy notes or reconcile them with the decision to credit the state agency opinions which had not considered this new and relevant evidence. Therefore, while we regard this as a somewhat close case, for these reasons, as discussed below, this failure of articulation now calls for a remand of

3

Sokolowski's case in order to allow the ALJ to further develop the record as to Sokolowski's condition following the issuance of the medical opinion evidence in this case.

## II.     Statement of Facts and of the Case

### A. Sokolowski's Physical Impairments

On October 20, 2021, Megan Sokolowski filed a Title II application for a period of disability and disability insurance benefits under the Social Security Act, alleging disability beginning January 15, 2019. (Tr. 18). Her alleged onset date was later amended to August 1, 2021. (Id.) In her application Sokolowski alleged that she was disabled due to a congenital spine deformity and migraines. (Tr. 64). Sokolowski was born on March 24, 1981, and was 40 years old on the amended disability onset date, making her a younger individual under the Commissioner's regulations. (Tr. 30). She is a high school graduate with a two-year radiology degree and had prior employment as an x-ray technician before starting her own photography business in January 2009. (Tr. 213, 224).

With respect to the severity of her impairments, the ALJ summarized the information provided by Sokolowski in the following terms:

> The claimant alleges disability due to a congenital spine deformity, asthma, and migraine headaches. The claimant testified to chronic low back pain, which worsened beginning in 2017. She testified that she had surgery in 2017 with a return of pain one month after it. She testified to

4

> ongoing pain after her 2022 fusion surgery and that she still has pain after removal of the hardware in July 2023. She testified to pain in both legs and that she has "nerve damage" in her left leg. She testified to the use of a back brace and cane and that she is unable to bend or squat. She testified to walking only 10-15 minutes, standing only 15-20 minutes, and sitting only 10-15 minutes due to pain and stiffness. She testified to having two migraine headache per week with light and sound sensitivity and associated nausea. She also testified to shortness of breath due to asthma with the need to use an inhaler and nebulizer (Hearing Testimony). The claimant alleges difficulty lifting, reaching, kneeling, and climbing stairs (Exhibit 10E).

(Tr. 25).

Sokolowski's clinical treatment records also confirmed that she repeatedly sought treatment for her chronic back pain but was unable to find a solution which provided her long-term relief. Nonetheless, examination records were mixed as she often exhibited normal strength in her lower extremities and ambulated normally, and some diagnostic testing showed no acute findings. In considering the plaintiff's argument that the ALJ's reliance upon the state agency consultants' opinions from early in the administrative record, we focus on the medical evidence following the last state agency opinion which was issued in in October 2022, to determine whether the plaintiff's condition significantly changed during that period. As the ALJ explained:

> On October 10, 2022, the claimant was again evaluated at the Emergency Department with complaints of worsening right low back pain with some left sided numbness but denied leg weakness or foot drop. David Horton, MD, noted that the claimant appeared very

uncomfortable and had tenderness at the right lumbar paraspinal region, L5-S1 level, but with normal motor function and no focal deficits. The claimant's lumbar CT performed that day showed no acute changes compared to her August 2022 study (Exhibit 15F).

The claimant's December 28, 2022 MRI of the lumbar spine showed evidence of her previous fusion at L5-S1 with pedicle screws and cage with the central canal and right neural foramina widely patent. The left neural foramina appeared developmentally narrower due to assimilation of the joint with sacralization of a portion of the left 5 transverse process and the sacral ala. It also showed a small, probable seroma, measuring up to 3cm, posterior to the spinous processes at eh L4-5 level (Exhibits 14F, 17F, and 26F).

On January 4, 2023, Colin Haines, MD, with the Virginia Spine Institute, evaluated the claimant. He noted the claimant's clinical history and reported ongoing low back pain, radiating down her legs. She presented with a normal gait, as well as normal heel and toe walk, normal balance tested by tandem gait, pain with flexion and extension of the lumbar spine, intact sensation, and negative straight leg raising bilaterally. Dr. Haines reviewed the claimant's x-rays performed that day, as well as her recent MRI of the lumbar spine. He recommended a lidocaine only injection at the hardware site. He also recommended further evaluation with an EMG/NCS and an updated CT scan (Exhibit 17F).

The claimant's January 20, 2023 CT of the lumbar spine showed mild and moderate changes throughout the lumbar spine, post-surgical changes at the L5-S1 level with the hardware intact, and mild subcutaneous edema posterior to L5-S1 (Exhibits 15F and 17F).

The claimant's January 30, 2023 EMG/NCS of the bilateral lower extremities showed evidence of mild chronic L5 radiculopathy on the left (Exhibit 17F).

On January 30, 2023, Dr. Haines noted that the claimant reported 50% relief temporarily following the hardware level injection. He advised that her ongoing low back pain appears to be primarily related to the

6

hardware in place but that it could not be removed at that time as her imaging does not show a dense fusion and that she was only seven month post-op at that point. He recommended bilateral L4-5 transforaminal epidural injections for diagnostic and therapeutic purposes to determine if a component of her pain is coming from that level (Exhibits 16F and 17F). The claimant underwent the bilateral transforaminal epidural steroid injections at L4-5 on February 10, 2023 (Exhibit 17F).

On April 24, 2023, Dr. Haines noted that the claimant reported 40% relief of her low back pain for two weeks following her February 2023 injection treatment but with no relief of her lower extremity symptoms. He noted that the claimant presented with significant tenderness over the left SI joint with restriction that day, which was likely contributing to her pain. He recommended bilateral SI joint injections and further evaluation with an updated lumbar CT (Exhibit 24F).

On May 6, 2023, the claimant was evaluated at the Emergency Department with complaints of a bifrontal headache with photophobia and sound sensitivity beginning 3-4 days ago. She presented with no neurologic focal defects and had complete relief of symptoms/pain with Reglan and magnesium (Exhibit 22F).

The claimant's May 26, 2023 lumbar CT showed no acute findings. It showed a stable laminectomy and posterior metallic fusion with interbody device at the L5-S1 level with no hardware complication, maintained disc spaces, and no significant central canal or neuroforaminal narrowing (Exhibit 24F).

On June 5, 2023, Dr. Haines noted that the claimant reported no relief with the bilateral SI joint injections. He reviewed the claimant's updated lumbar CT scan, showing progressive consolidation across the TLIF cage at the L5-S1. He advised the claimant of her treatment options. She agreed to proceed with lumbar hardware removal surgery. Dr. Haines also advised that the claimant's lower extremity symptoms may remain given her EMG/NCS study findings, which may be a result of her original fusion surgery (Exhibit 24F).

On July 20, 2023, Dr. Haines performed the claimant's removal of instrumentation at the L5-S1 level surgery with evaluation of the fusion at L5-S1 and posterior column osteotomy at L5 (Exhibits 24F and 25F).

The claimant's July 31, 2023 lumbar CT showed no acute findings. It showed non-specific soft tissue density at the left L5-S1 neural foramen, possibly representing post-operative soft tissue scarring or facet joint synovial cyst remnant, which could be causing mass effect on the exiting left nerve root at that level (Exhibit 24F).

On August 2, 2023, Dr. Haines noted that the claimant reported some improvement of her low back pain initially after the hardware removal surgery. However, she reported that she was in a motor vehicle collision on July 31. She was a restrained passage in the vehicle with no loss of consciousness and no airbag deployment. She had a CT scan performed as part of her evaluation that day. The claimant reported new onset of tingling in her left anterior thigh that was not present prior to the accident. She was able to rise out of a chair and ambulate. Her incision appeared closed with no sign of infection. She had tenderness over the left SI and left buttock region. She had altered sensation over the left anterior and lateral thigh, anterior and lateral shin, and bilateral feet. She had 5/5 strength with isolated motor strength testing of the lower extremities. He reviewed the claimant's CT with the fusion remaining intact without any dislocations or fractures at the L5-S1 level (Exhibit 24F).

(Tr. 23-24). Thus, as the ALJ summarized, the opinions of the state agency consultants did not consider the July 20, 2023, removal of Sokolowski's lumbar hardware and subsequent motor vehicle accident. Moreover, the ALJ's factual narrative of the plaintiff's treatment history ends in August of 2023, one month prior to physical therapy records which cast the severity of Sokolowski's condition in a fare different light.

Thus, further reinforcing the significance of these medical developments which occurred after the medical sources issued their opinions are physical therapy records which were not summarized, or seemingly considered, by the ALJ. On this score, in a September 14, 2023, discharge assessment, Drayer Physical Therapy noted:

> Patient demonstrated slight gains toward objective goals, but mobility at the lumbar spine is still heavily limited by pain. Patient continues to be limited in performance of ADL's, prolonged walking/sitting and is unable to complete more than one squat before she notes increased pain. The patient would benefit from continuing the established POC to further improve lumbar mobility and overall flexibility in to allow the patient to complete ADL's with less pain. The patient's rehab potential is fair.

(Tr. 1217). The notes state that she discontinued care after seven sessions, stating she attended a follow-up with her doctor and "due to the condition of her spine" wanted to discontinue care. (Tr. 1220). The notes also indicate she had severe limitations in her activities of daily living. (Id.)

**B. The Medical Opinion Evidence**

Four medical experts opined regarding the disabling effects of Sokolowski's impairments, all of which occurred prior to Sokolowski's hardware removal surgery, motor vehicle accident, and physical therapy notes stating she had severe limitations in her mobility.

9

At the outset, in May of 2022, at an early stage of the administrative process, Sokolowski underwent a consultative examination with NP Chrstine Fahr. Nurse Fahr then issued an opinion on her residual functional capacity (RFC) or ability to perform work-related activities. Fahr opined that Sokolowski could frequently lift up to twenty pounds and occasionally lift up to fifty pounds, could occasionally carry up to twenty pounds but never more than twenty pounds, and could sit, stand, and walk for two hours at a time and eight hours total in an eight-hour workday. (Tr. 732-33). She also opined that Sokolowski could occasionally perform all postural maneuvers. (Tr. 735).

Then, in May and October of 2022, two non-treating, non-examining sources, opined that Sokolowski was capable of performing light work with some postural limitations. On May 31, 2022, state agency consultant Dr. Jennie-Corinne Rebecca Baublitz-Brenenborg opined that Sokolowski could occasionally lift and/or carry twenty pounds and frequently ten pounds and could stand and/or walk for a total of about six hours in an eight-hour workday and could sit for a total of about six hours in an eight-hour workday. (Tr. 69-70). She also opined that Sokolowski was unlimited in her ability to climb ramps/stairs and balance but could only occasionally perform all other postural activities. (Tr. 70). On reconsideration, in October 2022, Dr. Ethel Marie Hooper also opined to the same limitations in sitting, standing,

10

walking, lifting, and carrying, but opined that Sokolowski was limited to occasionally performing all postural activities. (Tr. 80-82).

Some five months later, in March 2023, Sokolowski's treating provider, Dr. Paul Orange, submitted an assessment of her ability to perform work-related activities. Dr. Orange's opinion was significantly more restrictive than that of the state agency consultants and the consultative examiner. Thus, while each of the previous medical consultants opined that Sokolowski was capable of performing light work with some postural limitations, Dr. Orange opined that Sokolowski would be totally disabled. On this score, Dr. Orange opined that Sokolowski could only occasionally lift up to ten pounds, could sit for less than thirty minutes at one time, stand for less than fifteen minutes at one time, and walk for five to ten minutes at one time. (Tr. 1026). Dr. Orange also noted that Sokolowski could sit, stalk and walk a total of "0" hours in an eight-hour workday but would need to walk around every five to ten minutes for five-minute intervals and would need unscheduled breaks every fifteen minutes for fifteen to thirty minutes at a time. (Tr. 1027). He also opined that Sokolowski could rarely twist, stoop, crouch, climb stairs, and bend at the waist and could never climb ladders or balance and that she would be absent more than four days per month due to her impairments. (Id.) He stated, "pt unable to work at this time. Only relief from back pain is when laying down." (Tr. 1028).

11

Notably, all of these assessments preceded, and therefore did not evaluate, extensive medical records which post-dated March of 2023, including records relating to Sokolowski's July 2023 surgery and motor vehicle accident and her subsequent physical therapy records showing her condition had significantly deteriorated and that her mobility, including her ability to walk, sit, and perform activities of daily living was heavily limited.

It was against this clinical backdrop, where material subsequent medical developments were never examined by any medical opinion source, that this disability claim was heard by the ALJ.

### C. The ALJ Hearing and Decision

On September 6, 2023, an ALJ conducted a hearing regarding Sokolowski's disability claim at which Sokolowski and a vocational expert testified. (Tr. 38-63). Following this hearing, the ALJ issued a decision denying the plaintiff's disability application on November 21, 2023. (Tr. 15-37). In that decision, the ALJ first concluded that the plaintiff met the Act's insured requirements through December 31, 2025, and had not engaged in substantial gainful activity since August 1, 2021, the amended onset date. (Tr. 20). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that the plaintiff suffered from the following severe impairments: asthma, congenital spine deformity, post-laminectomy

12

syndrome, and migraine headaches. (Tr. 20). At Step 3 the ALJ determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 20-21).

The ALJ then fashioned the following RFC for the plaintiff:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional postural movements and avoid concentrated exposure to temperature extremes, wetness, loud noise, vibration, fumes, odors, dust, gases, poor ventilation, dangerous machinery, and unprotected heights.

(Tr. 24).

Notably, this RFC assessment mirrors the opinion of the non-treating and non-examining state agency source issued in October 2022. The ALJ found the state agency consultant opinions "persuasive," relying upon relatively normal examination findings including normal gait and intact strength which, again, were issued at the beginning of the disability period and prior to Sokolowski's July 2023 spine surgery. (Tr. 28). The ALJ explained:

> These opinions are persuasive. As State agency consultants, Dr. Baublitz-Brenenborg and Dr. Hooper reviewed the claimant's available treatment records prior to rendering their opinions, which they fully supported. They noted the claimant's congenital spine deformity for which she has undergone surgical intervention and history of migraine headaches. They noted the claimant's physical examination findings, showing an overall normal gait, intact strength generally, and normal reflexes. While these opinions are both consistent with the record as a whole, the undersigned finds that Dr. Hooper's opinion upon

13

reconsideration review is more persuasive overall regarding the claimant's non-exertional abilities and limitations.

(Tr. 28). The ALJ also found the May 5, 2022, opinion of Nurse Fahr partially persuasive as to her overall exertional abilities and limitations, i.e. that she could at least perform light work, however, the ALJ found some of Nurse Fahr's opinions regarding her limitations in ambulation inconsistent with other parts of her opinion. (Id.)

The ALJ then rejected the opinion of Dr. Orange as not persuasive, explaining that his opinion was based "at least in part on the claimant's subjective complaints" and was not supported by the primary care treatment records, again citing reports of normal gait and stable post-operative imaging studies. (Tr. 29). The ALJ also found Dr. Orange's opinion that the plaintiff was "unable to work at this time" inherently neither valuable nor persuasive since the issue of whether a claimant is disabled is an issue reserved for the Commissioner. (Id.)

Based upon this RFC determination, which adopted an RFC issued by medical sources whose opinions did not consider significant subsequent developments in Sokolowski's condition, the ALJ determined that she could perform her past work as an x-ray technician and that other jobs existed in significant numbers in the national economy that Sokolowski could perform. Accordingly, the ALJ denied her claim. (Tr. 30-31).

14

This appeal followed. (Doc. 1). On appeal, the plaintiff, in part, challenges the ALJ's reliance on these non-treating, non-examining source opinions which did not consider the entire medical record. On the unique facts of this case, where the ALJ relied upon opinions issued at the beginning of the disability period, prior to significant developments in her condition, and the ALJ's opinion did not acknowledge or analyze some of these developments, we find that the ALJ has failed to meet the duty of articulation required in Social Security appeals. Therefore, we will remand this case for further consideration and evaluation of the evidence.

## III.    Discussion

### A.    Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in

this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."

> Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v.
> Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

Biestek, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is

disabled, but rather whether the Commissioner's finding that she is not disabled is

supported by substantial evidence and was reached based upon a correct application

of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205,

at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.

Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of

a claim requires the correct application of the law to the facts."); see also Wright v.

Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review

of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential

standard of review. First, when conducting this review "we are mindful that we must

not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777

F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are

enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply

determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C.

§1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).  To satisfy this

requirement, a claimant must have a severe physical or mental impairment that

makes it impossible to do his or her previous work or any other substantial gainful

activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 42 U.S.C.

§1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).  To receive benefits under

Title II of the Social Security Act, a claimant must show that he or she contributed

to the insurance program, is under retirement age, and became disabled prior to the

date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a

five-step sequential evaluation process.  20 C.F.R. §§404.1520(a), 416.920(a).

Under this process, the ALJ must sequentially determine: (1) whether the claimant

is engaged in substantial gainful activity; (2) whether the claimant has a severe

impairment; (3) whether the claimant's impairment meets or equals a listed

impairment; (4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age,

19

education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11

21

(3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of

22

independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

C.    **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

The plaintiff filed this disability application after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning

24

"weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions " the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

26

It is against these legal benchmarks that we assess the instant appeal.

**D.    This Case Will Be Remanded.**

In our view, the ALJ's decision—which relies exclusively upon state agency opinions issued at the outset of the administrative process—pays insufficient deference to the familiar proposition that:

> [C]ase law . . . cautions courts to take into account the fact that state agency non-treating and non-examining source opinions are often issued at an early stage of the administrative process. While this fact, standing alone, does not preclude consideration of the agency doctor's opinion, see Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011), it introduces another level of caution that should be applied when evaluating reliance upon such opinions to discount treating and examining source medical statements. Therefore, where a state agency non-treating and non-examining opinion does not take into account material medical developments which have occurred after the opinion was rendered, that opinion often cannot be relied upon by the Commissioner to carry its burden of proof. See Batdorf v. Colvin, 206 F. Supp. 3d 1012, 1023 (M.D. Pa. 2016).

Foose, 2018 WL 1141477, at *7. Indeed, while the opinions of state agency consultants "merit significant consideration," Chandler, 667 F.3d at 361, "[a]s a matter of law and common sense, material medical developments which take place after a state agency or consulting expert's review of a claimant's file frequently can undermine the confidence which can be placed in this non-treating and non-examining source opinion." Dieter v. Saul, No. 1:19-CV-1081, 2020 WL 2839087, at *8 (M.D. Pa. June 1, 2020). Thus, when additional medical records show that the

27

claimant's condition and functional capacity appear have deteriorated in the period between the consultants' opinions and the ALJ's decision, this Court and others have concluded that the medical opinions do not constitute substantial evidence and have remanded the case for further proceedings. Garcia v. Dudek, No. 1:24-CV-00194, 2025 WL 674226, at *9–10 (M.D. Pa. Mar. 3, 2025) (collecting cases). On the contrary, where an ALJ discusses the additional medical evidence, "consider[s] [the opinion] in the context of the full record," and reconciles these records with the opinion upon which the ALJ relies, this Court has concluded that the ALJ does not err in considering the opinion. Hill v. Saul, No. CV 3:19-364, 2020 WL 3547437, at *2 (M.D. Pa. June 30, 2020).

Here the ALJ relied upon the non-treating, non-examining source opinions to reject Sokolowski's claim, but failed to recognize that there were significant medical developments which took place after those opinions were rendered in 2022 which undermined the reliance which could be placed upon these preliminary medical judgments. These subsequent material medical developments included Sokolowski's July 2023 lumbar spine hardware removal surgery, (Tr. 1103-05), and a motor vehicle accident occurring less than two weeks after her surgery in which she was a restrained passenger and sustained new onset of tingling in her left anterior thigh, (Tr. 1085). Moreover, while the ALJ's summary of the record included a

28

passing mention of these developments, the ALJ failed to address subsequent physical therapy records submitted just before the hearing, in September of 2023, which noted Sokolowski continued to be heavily limited in walking, sitting, and performing activities of daily living due to pain. (Tr. 1217-20). In our view, taken together these material developments in the treatment of Sokolowski's condition in the form of major spine surgery, coupled with the subsequent notes stating unequivocally that Sokolowski's functional capacity had significantly deteriorated, which the ALJ did not acknowledge or reconcile with the opinions he credited, undermine the evidentiary power of the state agency opinions upon which the ALJ relied.[2]

Simply put, more is needed here. It is axiomatic that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). This means that, where the ALJ relies upon a medical opinion which does not consider significant evidence of deterioration of a claimant's condition, the ALJ must reconcile the opinions he

---

[2] It is worth noting that we stop short of opining that the ALJ erred in failing to credit the treating physician, Dr. Orange's opinion since that opinion was issued only five months after the last state agency opinion and prior to the occurrence of the material developments we cite. Our view is only that substantial evidence did not support the RFC assessment of the ALJ which relied upon medical opinions that had not considered significant developments in the plaintiff's medical record, but we ultimately make no judgement as to which opinions were entitled to greater weight.

credits in the context of the full record. Here, the ALJ failed to explain how the state agency consultants' opinions that Sokolowski was capable of light work still controlled despite subsequent physical therapy records noting her mobility was heavily limited. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV.  **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: October 30, 2025